UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PARTS AUTHORITY, LLC,

      *Plaintiff*,

– against –

DANIEL BEYDA,

      *Defendant.*

**MEMORANDUM & ORDER**
23-cv-07656 (NCM) (VMS)

**NATASHA C. MERLE**, United States District Judge:

   Plaintiff Parts Authority, LLC brings this action against defendant Daniel Beyda for violaion of the faithless servant doctrine, breach of contract, and other misconduct during defendant's employment by plaintiff. Compl. ¶ 1, ECF No. 1. Before the Court is defendant's motion to dismiss the complaint in its entirety (the "Motion"). ECF No. 23. For the reasons stated below, defendant's Motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

   In 2021, plaintiff and defendant entered into an asset purchase agreement (the "APA"). Compl. ¶ 11. Pursuant to the APA, plaintiff bought substantially all of the assets of several non-party businesses owned and controlled by defendant. Compl. ¶ 11. These non-parties include Coney Island Auto Holdings Corp. ("Coney Island"), of which defendant is the majority shareholder, and other entities, of which Coney Island is the beneficial owner, that engage in selling and distributing after-market automotive parts (the "Coney Island Entities"). Compl. ¶ 8–9. The purchased assets included accounts receivable, auto parts inventory, intellectual property, and business records. Compl. ¶ 11.

At the same time, plaintiff hired defendant as a business manager. Compl. ¶ 12. Among other things, defendant had "managerial responsibilities over the Export Business" plaintiff acquired, including managing payments to plaintiff for sales occurring under the original Coney Island name. Compl. ¶¶ 14, 20. The governing employment agreement specified a term of three years. Compl. ¶ 13. However, defendant could be terminated earlier "for any reason and for no reason and with or without cause." Compl. ¶ 17.

In 2022, plaintiff received payments from customers that were greater than the invoices on plaintiff's systems. Compl. ¶ 25. The overpayment was "highly unusual" and spurred questions regarding defendant's recordkeeping. Compl. ¶ 25. Plaintiff also alleges that the discrepancy between customer invoices and payments "raised serious concerns" about defendant's conduct because defendant was "wholly operating the Export Business and Earnout Business" on plaintiff's behalf. Compl. ¶ 25. Plaintiff claims that defendant "refused" to explain the discrepancy or comply with the subsequent loss prevention investigation. Compl ¶¶ 25–26.

On June 15, 2022, Coney Island sued plaintiff in New York state court. Compl. ¶ 27. Coney Island alleged, among other things, that plaintiff breached the APA by failing to pay full consideration for the purchased assets as specified in the agreement. Opp'n, ECF No. 24, at 9. More specifically, Coney Island sought to recover nearly $16 million allegedly owed by plaintiff under three separate sections of the APA. Opp'n at 9. Parts Authority raised a number of affirmative defenses against Coney Island's breach of contract claims, several of which turn on whether Beyda was terminated "with cause" or "without cause." Mot. at 4.

One week after the state action was commenced, Parts Authority sent Beyda a notice of termination. Compl. ¶ 21. Plaintiff claims that defendant was initially terminated due to a series of disputes and misconduct, including harassment of co-workers, refusal to share operational details, and refusal to integrate Parts Authority team members into the export and earnout businesses. Compl. ¶ 23. Plaintiff alleges that defendant then engaged in "mass deletion, spoliation, destruction, download and/or transfer" of company data during the 24 hours after receiving notice of his termination. Compl. ¶ 33.

Over the next year, plaintiff conducted an investigation that revealed defendant had "illicitly diverted hundreds of thousands of dollars" during his employment. Compl. ¶ 39. In particular, plaintiff alleges that defendant created inaccurate invoices and used improper accounts to facilitate the diversion of funds "to himself or entities that he controlled." Compl. ¶¶ 42–43. Based on this investigation, plaintiff informed defendant in 2023 that his 2022 termination was with cause. Compl. ¶ 36. Plaintiff then filed this action seeking a declaratory judgment and relief for defendant's alleged violation of the faithless servant doctrine, breach of contract, unjust enrichment, and conversion. Compl. ¶¶ 49, 53, 58, 64, 70.

## DISCUSSION

I. *Colorado River* Abstention Doctrine

Defendant moves to dismiss plaintiff's claims under the *Colorado River* abstention doctrine. Mot. at 7. Courts review motions to dismiss based on *Colorado River* abstention as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *United States v. Blake*, 942 F. Supp. 2d 285, 292 (E.D.N.Y.

3

2013);[1] *see also 192 Morgan Realty, LLC v. Aquatorium, LLC*, No. 20-cv-03627, 2022 WL 123567, at *3 (E.D.N.Y. Jan. 13, 2022). Under Rule 12(b)(1), "a case is properly dismissed . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

*Colorado River* abstention allows a federal court to abstain from exercising jurisdiction in "exceptional circumstances . . . where an existing parallel state-court litigation would accomplish a *comprehensive disposition of litigation*." *Mochary v. Bergstein*, 42 F.4th 80, 85 (2d Cir. 2022) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817–18 (1976)) (emphasis original). However, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813.

A court considering abstention under *Colorado River* must first determine whether the concurrent federal and state proceedings are parallel. *Mochary*, 42 F.4th at 85. "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Id.* (quoting *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)). The parties and issues need not be perfectly symmetrical. *Potente v. Cap. One, N.A.*, No. 16-cv-03570, 2018 WL 1882848, at *4 (E.D.N.Y. Apr. 19, 2018). Rather, a court may find proceedings parallel "where there is a

---

[1]  Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

4

substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." *In re Comverse Tech., Inc. Derivative Litig.*, No. 06-cv-01849, 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006) (emphasis original); *see also Eagle One Roofing Contractors, Inc. v. Acquafredda*, No. 16-cv-03537, 2018 WL 1701939, at *4 (E.D.N.Y Mar. 31, 2018).

Where proceedings are found to be parallel, courts then consider six factors to determine whether abstention is appropriate:

> (1) whether the controversy involves a *res* over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Mochary*, 42 F.4th at 85. The balance of these factors is "heavily weighted in favor of the exercise of jurisdiction," and "[o]nly the clearest of justifications will warrant dismissal" for lack of subject matter jurisdiction pursuant to the *Colorado River* doctrine. *Id.* at 85–86. A factor that is neutral, or weighs equally for and against exercise of jurisdiction, "is a basis for retaining jurisdiction" because "the [Court's] task is to ascertain whether there exist exceptional circumstances . . . to justify the surrender of that jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 101 (2d Cir. 2012).

The state and federal actions here are not parallel. The parties in the state action are Coney Island as plaintiff and Parts Authority as defendant. Compl. ¶ 1, *Coney Island Auto Holdings Corp. v. Parts Authority*, No. 656816/2022, Mot., Ex. F ("State Compl."). Beyda is not a party to the state action. *See* State Compl. ¶¶ 11–12; Mot. at 8; Opp'n at 12.

5

While the parties need not be identical in order for the actions to be parallel, party analysis does not end the inquiry. The state action must also dispose of all claims asserted in the federal action. *Acquafredda*, 2018 WL 1701939, at *4.

Here, plaintiff's primary claims would not be resolved in the state action. *See Acquafredda*, 2018 WL1701939 at, *4. Quite the contrary. As described above, the state action involves Coney Island seeking recovery from Parts Authority for payment allegedly still owed under the APA. State Compl. ¶¶ 1, 59, 66, 74, 91. In contrast, this action involves Parts Authority seeking recovery from defendant for his alleged wrongful conduct during his employment. Compl. ¶¶ 49, 53, 58, 64, 70. Ultimately, Beyda is not before the state court and plaintiff's claims on defendant's individual liability would be unaddressed if the Court abstained from hearing his claims in this action. *Compare* State Compl. ¶¶ 11–12 *with* Compl. ¶¶ 3–4.

The state court case involves claims primarily under the APA agreement between Parts Authority and Coney Island. *See* Opp'n at 9. Although defendant was a party to the APA and his termination for cause was raised as an affirmative defense in the state case, the state action does not directly implicate Beyda. *See* Compl ¶ 11; Mot. at 4. Defendant is only relevant in the state case insofar as the APA provides that defendant will manage the business while employed and limits payments to Coney Island if defendant's employment was terminated with cause. APA §§ 2.6–2.8, Compl. Ex. A ; *see also* State Compl. ¶¶ 59, 66, 74. Thus, even if Parts Authority's affirmative defenses prevailed in the state action, the state court would not need to decide if defendant was personally liable for damages arising from his alleged misconduct during his employment. Therefore, plaintiff's claims will not be resolved in the state action.

Even if the cases were parallel, which they are not, the *Colorado River* factors do not warrant the Court's abstention. *See Mochary*, 42 F.4th at 85. The majority of the factors are neutral: there is no *res* at issue, no forum is more convenient between the ongoing proceedings since the fora are state and federal courts within New York City,[2] and piecemeal litigation would not be avoided since, as discussed above, the claims against defendant would not be resolved by the state action. The sixth factor, protection of plaintiff's federal rights, is also neutral because plaintiff claims diversity jurisdiction rather than prototypical federal rights such as a constitutional claim. *Cf. Niagara Mohawk Power,* 673 F.3d at 103. But to the extent that the Court should look beyond the federal rights specifically to all of the rights raised in the federal action, the Court finds the state proceedings inadequate to protect the rights plaintiff raises here because any ruling in the state court will not determine defendant's personal liability for the alleged misconduct during his employment. Thus, plaintiff would be unable to recover damages for the alleged misconduct even if successful on its affirmative defense that defendant was terminated with cause.

Only two factors weigh in favor of abstention: the state action was filed first and has already completed discovery while this action has not, *see* Opp'n at 16, and state law governs plaintiff's claims. However, two factors favoring abstention are insufficient to

---

[2]     This Court is arguably the more convenient forum for litigation between Parts Authority and Beyda because the relevant employment agreement explicitly names this Court and the state court in Nassau County. Mot., Ex. C, APA § 10(b)(i). To the extent defendant argues that he would have waived the forum selection clause, this argument is unpersuasive. *See* Reply, ECF No. 25, 3–4. Beyda has not demonstrated that Parts Authority was required to give him the opportunity to waive the forum selection clause.

overcome the weight of the neutral factors. Since neutral factors favor the exercise of jurisdiction, abstention is not appropriate.[3] *See Niagara Mohawk Power,* 673 F.3d at 101.

## II. Declaratory Judgment

Defendant argues that plaintiff's first cause of action, seeking a declaration that plaintiff terminated defendant's employment for cause, should be dismissed. Mot. at 14. Declaratory relief under the Declaratory Judgment Act ("DJA") involves a judicial determination of "the rights and other legal relations of any interested party." 28 U.S.C. § 2201. Courts are afforded "unique and substantial discretion in deciding whether to declare the rights of litigants." *Peconic Baykeeper, Inc. v. Suffolk Cnty.*, 600 F.3d 180, 187 (2d Cir. 2010) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). Declaratory judgments are only available where there is a live case or controversy, and the "critical question is whether there is a substantial controversy . . . of *sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023) (emphasis original).

When evaluating whether to exercise jurisdiction over a claim for declaratory relief, courts analyze several non-exhaustive factors:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or

---

[3] Defendant also seeks a stay under *Colorado River* in the alternative. Although a court that does not abstain under *Colorado River* can issue a discretionary stay, the Court declines to grant defendant's request to do so here. The primary reason that counsels against abstention, the lack of ruling on defendant's liability, similarly counsels against issuing a stay. *Cf. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28, (1983) ("[A] stay is as much a refusal to exercise federal jurisdiction as a dismissal.").

8

> foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

*Admiral Ins. Co.*, 57 F.4th at 99–100. Courts have "broad discretion to weigh the factors" and "no one factor is sufficient" to resolve whether the Court should or should not exercise jurisdiction under the DJA. *Id.* at 100.

While a declaratory judgment may be useful in establishing whether defendant was and could have been fired for cause under the employment agreement, thus making Beyda's termination status certain, the factors counsel against exercising jurisdiction over plaintiff's DJA claim.

In federal actions, courts have refrained from exercising jurisdiction over a declaratory action when the issue would necessarily be determined through separate claims. Courts may compare the declaratory claim to separate claims made within the same lawsuit or a claim raised in a separate lawsuit. *Compare Lim v. Radish Media Inc.*, No. 22-cv-01610, 2023 WL 2440160, at *2 (2d Cir. Mar. 10, 2023) (summary order) (affirming dismissal of declaratory judgment claim as "impermissibly duplicative" of breach of contract claim in same case) *with Gorfinkel v. Ralf Vayntrub, Invar Consulting Ltd.*, No. 11-cv-05802, 2014 WL 4175914, at *6 (E.D.N.Y. Aug. 20, 2014) (dismissing declaratory judgment action because it was duplicative of a defense in a related federal case). In either circumstance, the Court analyzes the usefulness and addresses duplicity of the declaratory relief. *See, e.g.*, *Bright Kids NYC, Inc., v. QuarterSpot, Inc.,* No. 20-cv-09172, 2021 WL 4267637, at *5 (S.D.N.Y. Sept. 20, 2021) (declining to exercise jurisdiction over a declaratory judgment claim that would serve no useful purpose and where an issue was only in the domain of the state court); *Soros Fund Mgmt. LLC v. TradeWinds Holdings, Inc.*, No. 17-cv-03187, 2018 WL 1276879, at *3–4 (S.D.N.Y. Mar.

9

12, 2018) (declining to exercise jurisdiction where the "declaratory judgment would not serve a useful purpose because there is an earlier filed case on the merits" in state court).

Here, plaintiff seeks a judgment that would, as plaintiff acknowledges, preclude the damages sought in the state action because that relief is linked to whether defendant was terminated for cause. Compl. ¶ 47. Indeed, the declaratory judgment is so inextricably linked to the state action that Parts Authority raised Beyda's termination for cause as an affirmative defense and the state court will likely need to determine whether termination was with cause as part of any damages calculation. Since Beyda's termination status will likely be decided through separate claims before the state court, the Court finds the declaratory action ill-suited for this federal case. The links between the declaratory judgment and the state action indicate that the sought remedy here may be an attempt at "fencing" or "a race to *res judicata*." *See Admiral Ins. Co.*, 57 F.4t at 100. The centrality of the termination status to the state action also cautions the Court against exercising jurisdiction over the declaratory judgment because to do so may "increase friction" or "improperly encroach" on the state court. *See id.* at 100.

Lastly, the state court is likely able to provide a more effective remedy because the proper calculation of payment due under the APA is a question before it. *See* State Compl. ¶ 7. Judicial efficiency and economy would also be served by declining to exercise jurisdiction. As noted above, the topic of the declaratory judgment action seems central to calculating any relief in the state action. The risk of duplicative efforts by the Court thus weighs in favor of restraint.

Because the factors weigh against exercising jurisdiction on the issue presented for declaratory relief, plaintiff's first cause of action is dismissed.

### III. Failure to State a Claim

Defendant also asserts that plaintiff has failed to state a valid claim for violation of the faithless servant doctrine, breach of contract, unjust enrichment, and conversion. Mot. at 17–25. The Court finds otherwise.

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all factual allegations contained in the complaint are assumed to be true, this rule does not apply "to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

Concerning plaintiff's second cause of action, defendant asserts that plaintiff alleges mere negligence and therefore has inadequately pled a violation of the faithless servant doctrine. Mot. at 18. However, plaintiff's complaint, read in its favor, alleges intentional conduct by defendant that goes beyond negligence. For example, plaintiff alleges that defendant improperly acquired "hundreds of thousands of dollars" and then "conceal[ed] his wrongdoing." Compl. ¶¶ 39–40. Plaintiff's allegations are consistent with the disloyal conduct required by the faithless servant doctrine. *See Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003). The allegations are also akin to what defendant calls the "touchstones" of the faithless servant doctrine: "embezzlement, unfair competition, [and] diversion of business." Mot. at 19. This includes plaintiff's allegations that defendant used his employment with Parts Authority

11

to "illicitly divert[] hundreds of thousands of dollars" and created false records to "facilitate wrongful diversion" of Parts Authority funds. Compl. ¶¶ 39, 43.

Similarly, defendant asserts that plaintiff fails to state a claim for the third cause of action, breach of contract due to Beyda's misconduct, because it "does not identify any provision of the Employment Agreement that defendant allegedly breached." Mot. at 21. To the contrary, the complaint makes several references to sections of the employment agreement and defendant's conduct that allegedly breached the agreement. *See* Compl. ¶¶ 14, 18–19, 36–37. The references include noting that Section 2(b) sets forth "managerial responsibilities" and compliance with Parts Authority policies and Section 7(b) requires defendant to "immediately deliver . . . property, documents[,] or data" if defendant's employment is terminated. Compl. ¶¶ 14, 18. The complaint goes on to allege defendant's conduct that arguably violates those same provisions, including "destruction and refusal to turn over Plaintiff's books, records[,] and property after being notified of his termination." Compl. ¶ 36. Although plaintiff's allegations connecting defendant's allegedly violative conduct to the employment agreement are thin, the references throughout the complaint provide defendant with "fair notice of what the claim is and the grounds upon which it rests," and provides the grounds of plaintiff's entitlement to relief. *Twombly*, 550 U.S. at 555.

Lastly, defendant attacks the fourth and fifth causes of action—unjust enrichment and conversion, respectively—as failing to state a claim for relief and as duplicative of plaintiff's breach of contract claim. Plaintiff provides factual allegations of defendant's misconduct that plausibly align with unjust enrichment and conversion, including the assertions that defendant was "unjustly enriched by his diversion and receipt of monies" at plaintiff's expense, and that defendant had "dominion and control over" plaintiff's

money and has refused to return it. Compl. ¶¶ 61, 62, 67–69. At this stage, plaintiff's allegations are suficient to survive a motion to dismiss.

Furthermore, plaintiff pleads its unjust enrichment and conversion claims in the alternative to its breach of contract claim. Compl. ¶¶ 60, 66. A plaintiff may plead equitable, quasi-contract claims in the alternative to contract claims only "if there is 'a dispute over the existence, scope, or enforceability of the putative contract.'" *Goldberg v. Pace Univ.*, 88 F.4th 204, 215 (2d Cir. 2023) (quoting *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 263 (2d Cir. 1999)); *see also Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 Fed. App'x. 57, 59 (2d Cir. 2011) (noting that where a valid agreement applies, claims "sounding in fraud, conversion, and other torts . . . are generally precluded"). Although "there is no dispute that an enforceable written contract existed," defendant disputes the contract's applicability to his conduct. Mot. at 20, 23. Since the scope of the employment agreement, and whether it prohibited defendant's conduct, remains in dispute, plaintiff states valid unjust enrichment and conversion claims in the alternative.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part. The Court dismisses plaintiff's first cause of action for declaratory judgment with prejudice.

**SO ORDERED.**

                                                 */s/ Natasha C. Merle*
                                                 NATASHA C. MERLE
                                                 United States District Judge

Dated:        July 26, 2024
                Brooklyn, New York