

KANE KESSLER, P.C.
600 THIRD AVENUE
NEW YORK, NEW YORK 10016-1901
TEL 212.541.6222
FAX 212.245.3009
WWW.KANEKESSLER.COM

WRITER'S DIRECT NUMBER
212-519-5164

WRITER'S EMAIL
dgimmel@kanekessler.com

June 22, 2026

**_VIA ECF_**

Hon. Seth D. Eichenholtz
United States District Court for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     _**Parts Authority, LLC v. Beyda**_**, No.1:23-cv-07656-SDE**

Dear Judge Eichenholtz:

For the reasons set forth below, Plaintiff Parts Authority, LLC ("Parts Authority") moves _in limine_ to preclude Defendant Daniel Beyda ("Beyda") from offering at trial testimony of certain witnesses as irrelevant, cumulative or duplicative pursuant to Fed. R. Evid. 402 and 403 and based on the principles of collateral estoppel.

## I.     Relevant Background

Parts Authority is in the business of after-market auto parts sales to customers in the United States and abroad, with approximately 275 locations nationwide.  Beyda was and is controlling shareholder of Coney Island Auto Holdings Corp. ("Coney Island"), which also was in the same business until July 2021, when Parts Authority and Coney Island closed on a transaction pursuant to an Asset Purchase Agreement ("APA") dated July 8, 2021. Ex. A, APA. At the same time, Beyda became a Parts Authority employee, as "Business Manager - Export Business and Special Accounts," until his termination on June 23, 2022.  Ex. B, D. Beyda Employment Agmt.; Ex. C, Term. Letter.

At trial, Parts Authority will demonstrate that during his employment at Parts Authority, Beyda repeatedly breached his employment agreement and common law duties.  Among these breaches were Beyda's receipt and diversion for personal use of over $799,000 in accounts receivable paid by customers of Parts Authority's export business in the Middle East, during the _entire_ period of Beyda's employment at Parts Authority as the _Manager_ of the very same export business, and as the person directly responsible for collection of payments from these very customers and for remitting the funds to Parts Authority.

The fact that Beyda did not remit these funds to Parts Authority during Beyda's employment in 2021-2022 is not disputed—on December 15, 2023, Beyda wired $712,323 to Parts Authority in response to a report from Basil Imburgia, Parts Authority's forensic accountant and expert witness in this case.  Likewise, today, June 22, 2026, Beyda wired an additional $87,250 in customer funds identified by Imburgia in March 2026 as belonging to Parts Authority. _See_ Ex. D, June 22, 2026, Wire Confirmation.  Moreover, it is judicially established that after

June 7, 2022, Beyda intentionally deleted "massive" amounts of email and other electronically stored information that he had a duty to preserve. Ex. E, Dec. 7, 2023, Order, Index No. 656816/2022. The New York State trial court's decision, after a fully briefed motion for spoliation sanctions, oral argument, and an evidentiary hearing, was affirmed by the Appellate Division, First Department, as based on clear and convincing evidence. *See Coney Island Auto Holdings Corp. v. Parts Authority, LLC*, 231 A.D.3d 470 (1st Dep't 2024).

Parts Authority will demonstrate at trial that, in addition to these inarguable breaches of his duties to Parts Authority, Beyda breached his employment agreement by failing to return all company property upon his termination, and by hiring Juliana Halls (a Parts Authority employee) to perform "bookkeeping" for Beyda with respect to the very funds that he failed to remit to Parts Authority. Parts Authority will also demonstrate that Beyda was a faithless servant, such that all compensation and benefits paid to Beyda by Parts Authority in connection with Beyda's employment should be clawed back.

In the Joint Pre-Trial Order ("JPTO"), Beyda stated that in addition to witnesses already identified by Parts Authority[1] he intends to call at trial (1) four additional witnesses concerning Beyda's performance as an employee at Parts Authority; and (2) six additional witnesses to support Beyda's "grand conspiracy" theory he propounds to collaterally attack the New York State trial and appellate court decisions that Beyda intentionally deleted evidence in June 2022.

## II.    Applicable Standard

Rule 402 provides that all relevant evidence is admissible except as otherwise provided by the Constitution, Act of Congress, or applicable rule. Rule 401 defines relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence," so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401. To be relevant, evidence need not prove a fact in issue by itself, but only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *McKoy v. North Carolina*, 494 U.S. 433, 440 (1990) (citation omitted).

Under Rule 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In weighing the probative value of evidence against its troublesome qualities under Rule 403, "[d]istrict courts have broad discretion." *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008) (citations omitted). Applying these principles as well as those relating to collateral estoppel, separately addressed at length in Parts Authority's accompanying motion *in limine* specifically dealing with the New York State judicial determinations that Beyda spoliated evidence, all the witnesses addressed below should be precluded.

## III.    "Performance" Related Witnesses Should be Precluded

With respect to the first group of witnesses ostensibly related to Beyda's "performance," Beyda identified (with descriptions verbatim from the JPTO):

---

[1] Parts Authority identified as trial witnesses (a) Parts Authority personnel with direct knowledge of the actual disputed issues at trial; (b) Beyda himself; and (c) witnesses with direct personal knowledge concerning Beyda's invoicing, collection, and tracking of funds received from Parts Authority's customers, as well as Beyda's personal finances and financial recordkeeping across multiple accounts at financial institutions.

- Alex Buller – "Ms. Buller is PA's in-house counsel.  Defendant will question Ms. Buller regarding efforts Mr. Beyda made to have customer payments go directly to PA and to have his e-mail accounts linked to the PA e-mails, and for him to be given access to PA accounts receivables and generally regarding efforts he made to try and improve the flow of information."

- Ro[b] Blitzstein – "Former PA employee (Vice President of Pricing and Vendor Programs) – expected to testify about Mr. Beyda's performance as PA Export Consultant, and to refute Plaintiff's claim that Mr. Beyda acted inappropriately during the course his consultancy with the PA." [sic]

- Evan Wildstein – "PA Board Member- expected to testify about the scope of the APA, and to refute Plaintiff's claim that Mr. Beyda was a faithless servant during the course of his consultancy with the PA."

- Howard Cohen – "Will be questioned regarding Mr. Beyda's performance as an Export consultant."

*First,* Beyda's "performance" in general is not relevant to the claims at trial.  The question is whether Beyda remitted customer funds to Parts Authority, as he was required to do in his role as the *Manager* of the export business for Parts Authority.  Beyda admits that he did not do so, and "returned" approximately $799,000 years later after Parts Authority's forensic accountants finally caught up to Beyda.  Nor is Beyda's "performance" relevant to whether he returned company property, as he was required to do by Parts Authority's policies and procedures that Beyda received and signed when he became a Parts Authority employee.  Nor is Beyda's performance relevant to whether Beyda violated his restrictive covenants and non-solicitation agreements when he hired Ms. Halls (who became a Parts Authority employee in July 2021) to work for Beyda on Beyda's financial records and ledgers.  Thus, none of these witnesses are relevant at trial for this purpose.

*Second*, Beyda was unable to articulate any specific "performance" issue on which any of these witnesses would be expected to give probative, non-cumulative testimony.  During meet-and-confer discussions between counsel, Beyda's counsel refused to elaborate any further beyond the words written in the JPTO—except to say that Beyda may or may not call these witnesses at trial, and that Parts Authority would need to wait until trial to find out and then make its objections.  Beyda's counsel's position is contrary to the purpose of a Joint Pretrial Order and the meet and confer process to help streamline the trial.  Such position also underscores the need to preclude these witnesses in absence of a legitimate proffer of relevance and probative value.

*Third*, Beyda is calling Ms. Buller, Mr. Wildstein and Mr. Cohen purely to harass them and Parts Authority.  Ms. Buller is Parts Authority's current general counsel.  It is entirely improper and futile to "question Ms. Buller regarding *efforts Mr. Beyda* made" about anything— Beyda himself can testify to those "efforts"—and to the extent that Beyda might seek to question Ms. Buller about any communications between her and her client (or outside counsel), such testimony is barred by the attorney client privilege and attorney work product doctrines.  Indeed, the parties have already stipulated in the Joint Statement of Facts submitted to the Court with the JPTO, both that Beyda attempted to have certain customer payments go directly to Parts Authority and that Beyda requested that his Coney Island email accounts be linked to his Parts Authority email account.  *See* ECF No. 87-1, Joint Statement of Facts, ¶¶ 31 - 33.  Moreover,

3

both Randy Buller (Ms. Buller's father and one of the co-founders of Parts Authority) and Larry Schneider (Parts Authority's vice president of accounts receivables who worked with Beyda directly on the money at issue) are already on the witness list, and Beyda already indicated that he intends to call them both as witnesses.  In short, there is simply no legitimate basis to include Ms. Buller on the witness list except to harass her.

Similarly, the sole purpose of identifying Mr. Wildstein appears to be to harass a Parts Authority Board member.  There is no indication whatsoever that Mr. Wildstein has any personal knowledge of Beyda's performance or the operation of the Export Business managed by Beyda, such that he could "refute" any testimony by any other witness with such direct knowledge. Moreover, "the scope of the APA" is not at issue in this trial, and if it were, Beyda has not identified any reason why Mr. Wildstein's testimony might be needed—when Beyda himself and Randy Buller can testify about it, just as they did during the New York State trial (and at numerous depositions) where the scope of the APA was actually at issue.

Likewise, Mr. Cohen (currently, Parts Authority's VP of IT Enterprise Applications) had no direct involvement in Beyda's collection of accounts receivable from export customers and remittance of funds to Parts Authority.  Thus, even if Beyda was an "Export consultant" (which he was not, because he was an employee of Parts Authority and the Manager of its Export Business), Beyda's counsel has not identified any testimony of Mr. Cohen which is different from what Mr. Schneider knows personally as the Parts Authority employee who communicated directly with Beyda concerning outstanding invoices and payments received by Beyda from Parts Authority's customers.  And again, it is not disputed that Beyda *failed* to remit approximately $799,000 of export customers' payments belonging to Parts Authority between July 2021 and June 2022.

*Finally*, Mr. Blitzstein (a former Parts Authority employee) is based in Texas, and also had nothing to do with Beyda's collection of customer payments and failure to remit the cash to Parts Authority.  Mr. Blitzstein therefore cannot possibly "refute" anything to which other Parts Authority employees will testify based on their personal knowledge, and if he has any relevant information at all, that information will be cumulative and duplicative.

In short, this Court should preclude Beyda from calling these witnesses on his case in chief, particularly in light of Beyda's vague and conclusory descriptions in the JPTO, and avoid irrelevant, cumulative, and duplicative testimony that will cause undue delay and a waste of the parties' and the Court's time and resources at trial.  *See, e.g.*, *Adams-Flores v. City of New York,* No. 18-CV-12150 (JMF), 2024 WL 519819, at *2 (S.D.N.Y., Feb. 9, 2024) (precluding witnesses "given other witnesses who will appear at trial," and where proponent of testimony "provided only the vague notice that these witnesses would testify about their 'knowledge and information concerning the facts set forth in the Complaint").

### IV.    Spoliation Related Witnesses Are Barred by Collateral Estoppel

In his quixotic quest to collaterally attack two separate decisions by New York State courts that Beyda engaged in intentional deletion of ESI in June 2022, Beyda has identified six witnesses for trial presumably because "Defendant is still investigating whether there is a basis to move to preclude the State Court's spoliation finding" (JPTO at 4).  Specifically, Beyda listed the following (again, verbatim from the JPTO):

4

- Robert McManus – "former PA Chief Information Officer who is expected to testify that contrary to the representations PA made to the NYS Trial Court, the PA did not hand Mr. Beyda's computer to outside counsel but instead, it kept the computer at its office and ran various diagnostics on the computer."

- Eric Stone – "Former Paul Weiss Partner involved in purported safeguarding of the subject computer. Defendant intends to question him about the chain of custody of said computer."

- Jim Hopkins – "Head of cyber security – will ask him questions regarding the chaim of custody of Danny's computer." [sic]

- Lisa Tanzi – "PA General Counsel.  Mr. McManus claims Mr. Beyda's computer was given to Ms. Tanzi shortly after Mr. Beyda was terminated."

- Daniel Gimmel – "chain of the custody of the subject computer" [sic]

- Joey Kaplan – "Transperfect employee with knowledge of the chain of custody of the subject computer."

As a threshold matter, Beyda is collaterally estopped from challenging or introducing evidence to reopen and relitigate the findings of the New York Supreme Court and the Appellate Division, First Department, that Beyda engaged in deletion of ESI.  This basis for preclusion is addressed in Parts Authority's separate motion *in limine* to preclude Beyda's collateral attack on these New York State court decisions.  Nevertheless, and for the avoidance of doubt, the sole purpose of including this list of witnesses in the JPTO is to harass Parts Authority, its current and former counsel, and to needlessly protract these proceedings to retread the issue of Beyda's spoliation which has been tried and tried again, with both the trial court and the appellate court in New York State ruling against Beyda on the basis of "clear and convincing evidence."[2]

Moreover, the chain of custody of the computer is not at issue in this trial and there are no disputed facts *except* Beyda's alleged "grand conspiracy" against him.  *See* Ex. F, May 29, 2026 Conf. Tr. at 23:23-24.  This is precisely the type of "evidence" that Rules 402 and 403 seek to preclude.  Indeed, Beyda's counsel now has learned—prior to the submission of the JPTO—that Beyda's own counsel at K&L Gates sent a letter to Parts Authority in January 2023, attaching a lengthy series of emails between Paul Weiss and K&L Gates setting forth the precise timeline of the computer's delivery by Beyda *personally by hand* to Paul Weiss, and the forensic imaging of that computer by TransPerfect Legal Solutions on June 23, 2022.  Ex. G, K&L Gates LLP letter January 20, 2023.

In short, this is pure harassment and waste of the parties' and the Court's time and resources, these "spoliation" related witnesses should be precluded, and the Court should put an end to Beyda's unending efforts to needlessly protract these proceedings with "grand conspiracy" theories.

---

[2] For example, Liza Tanzi was not employed by Parts Authority until after the spoliation occurred, Daniel Gimmel was not retained in this lawsuit until after Beyda's computer was turned over to Paul Weiss and, indeed Beyda's spoliation was only discovered in 2023 after his computer was given to Kane Kessler, P.C.—and the "clean review protocol" finally concluded at Parts Authority's insistence and over Beyda's efforts to delay.  Moreover, it should be noted that Eric Stone, Daniel Gimmel, Howard Cohen and Joey Kaplan were not identified in Beyda's Initial Disclosures, Interrogatory Answers or in any other mode of notice to Parts Authority.

Respectfully submitted,

*/s/ Daniel Gimmel*

Daniel Gimmel

cc:    Gerald Grunsfeld, Esq.

6