

KANE KESSLER, P.C.
600 THIRD AVENUE
NEW YORK, NEW YORK 10016-1901
TEL 212.541.6222
FAX 212.245.3009
WWW.KANEKESSLER.COM

WRITER'S DIRECT NUMBER
212-519-5164

WRITER'S EMAIL
dgimmel@kanekessler.com

July 1, 2026

*VIA ECF*

Hon. Seth D. Eichenholtz
United States District Court for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:    *Parts Authority, LLC v. Beyda*, No.1:23-cv-07656-SDE**

Dear Judge Eichenholtz:

For the reasons discussed below, Plaintiff Parts Authority, LLC ("Parts Authority") respectfully submits that this Court should deny defendant Daniel Beyda's ("Beyda") and his counsel's application for Mr. Grunsfeld and his firm to withdraw as counsel and for adjournment of the trial in this action from July 13, 2026, to sometime after October 4, 2026 (the "Application").  Simply put, the application is an eleventh hour—but not the first—cynical attempt to delay Beyda's day of reckoning at the upcoming trial, abuse the judicial process, and prejudice Parts Authority.  We look forward to discussing these issues with the Court at tomorrow's conference, which Parts Authority's counsel will attend in person.

**I.    Preliminary Statement**

The July 13, 2026, trial date has been set with the parties' consent since April 27, 2026, and on May 29, 2026, the parties appeared at the final pretrial conference before the Court, where the trial date was confirmed and interim deadlines for pretrial submissions were set. Nonetheless, on June 5, 2026, this Court granted Beyda's motion to extend deadlines for the joint pre-trial order ("JPTO") and motions *in limine* (over Parts Authority's objection), and stated unequivocally that "[a]bsent unexpected and unforeseen circumstances, the trial will not be adjourned and will proceed as scheduled on 7/13/2026.  To allow sufficient time for the parties and the Court to prepare for the trial, there will be no further extension of these deadlines."

On June 15, 2022, the parties filed the JPTO and statement of undisputed facts ("SOF"). *See* ECF 87.  On June 22, 2026, the parties filed their respective motions *in limine*.  On June 29, 2026, Parts Authority responded to Beyda's three separate but equally baseless motions *in limine* (ECF 99 –101) and filed its pretrial brief (ECF 102) as ordered by the Court.  Instead of filing his



July 1, 2026
Page 2

response to Parts Authority's motions *in limine* (which this Court should now grant as unopposed) and a pretrial brief, Mr. Grunsfeld filed his Application.

The trial is the culmination of Parts Authority's long running effort to hold Beyda accountable for blatant and egregious breaches of his contractual and common law obligations, and faithless service to Parts Authority.  Parts Authority respectfully refers the Court to its pretrial brief (ECF 102) for a more fulsome discussion of Beyda's egregious wrongdoing and concealment thereof, entitling Parts Authority to compensatory damages of at least $2 million and punitive damages.

Mr. Grunsfeld's Application is as flimsy as Beyda's defense to Parts Authority's claims that he made a "mistake" when he kept $799,853 of export customers' funds and used them for his personal purposes—when his *job* as the Business Manager – Export Business and Special Accounts was to track, collect, and promptly remit every dollar paid by these customers to Parts Authority.[1]  Mr. Grunsfeld apparently felt "compelled" to file the Application "due to significant and irreconcilable strategic and professional differences" with Beyda, which led Beyda to instruct Mr. Grunsfeld to "stop all work on this case."  ECF 98-1, ¶¶ 3; 5.  Notwithstanding Mr. Grunsfeld's "profuse apology," irreconcilable differences is not a sufficient basis for withdrawal at this late stage on the eve of trial, even if Mr. Grunsfeld's assertions are true.  Nor is it a valid basis for Beyda and Mr. Grunsfeld's failure to submit oppositions to Parts Authority's motions *in limine* or a pretrial brief in accordance with this Court's deadlines and in the absence of any extension issued by the Court.

And even if the Court were to permit Mr. Grunsfeld's withdrawal—upon a far more stringent and detailed *in camera* showing required by the New York Rules of Professional Conduct, for instance that Beyda persists in a course of action that Mr. Grunsfeld believes is criminal or fraudulent, or that Beyda already used Mr. Grunsfeld's services to perpetrate a crime or fraud—there should be no *adjournment* of the July 13, 2026, trial date.  Indeed, if Beyda is engaging in sufficiently serious misconduct to warrant Mr. Grunsfeld's withdrawal, that is a reason to *start* the trial on July 13, 2026, and bring Beyda to justice.

In short, as a matter of fact and law, the Application should be denied, and the trial should proceed without any further delay or shenanigans by Beyda.

## II.    Withdrawal Should Be Denied

New York Rules of Professional Conduct 1.16(d) states, "[A] lawyer shall continue representation notwithstanding good cause for terminating the representation" when so

---

[1] As discussed in Parts Authority's pretrial brief, Beyda then engaged in a pattern of behavior to conceal his misconduct, including destruction of company data and ESI for which two separate New York State Courts ruled that a spoliation sanction and an adverse inference against Beyda is appropriate.  Nor were these indisputable facts the only evidence of Beyda's pervasive and ongoing violations of his duties to Parts Authority.  Thus, Parts Authority is heading to trial with clear and convincing proof of Beyda's misconduct (while its burden is to do so by preponderance of the evidence), and Beyda's flimsy defense is no defense at all.



July 1, 2026
Page 3

ordered by the court. RPC 1.16(d).  This Court's Local Civil Rule 1.4 states that "an attorney who has appeared for a party may be relieved or displaced only by order of the court. Such an order may be issued following the filing of a motion to withdraw, and only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, and whether or not the attorney is asserting a retaining or charging lien."  Local Civ. R. 1.4.

This Court has "considerable discretion in deciding a motion for withdrawal of counsel," (*S.E.C. v. Great American Technologies, Inc.*, No. 07 Civ. 10694(DC), 2009 WL 4885153, at \*5 (S.D.N.Y. Dec. 15, 2009)), which requires consideration of two factors: (1) "whether there are satisfactory reasons for the withdrawal;" and (2) "the impact of the withdrawal on the timing of the proceeding."  *Goolden v. Wardack*, No. 19-CV-6257 (ALC) (VF), 2025 WL 2371539, at \*3 (S.D.N.Y. Aug. 15, 2025) (citations and quotation marks omitted).

A mere "difference of opinion" between Mr. Grunsfeld and Beyda is insufficient to meet the first factor.  *See John v. All Star Limousine Service, Ltd.*, No. 17-CV-6327 (PKC), 2019 WL 13205033, at \*2 (E.D.N.Y. Dec. 9, 2019) ("[e]ven where there is a difference of opinion between counsel and a plaintiff on the merits of the claim ..., the obligation undertaken by counsel in accepting a retainer might require counsel to proceed to trial especially when, as here, counsel wishes to withdraw before trial.") (citation and internal quotation marks omitted); *but see Whiting v. Lacara*, 187 F.3d 317, 323 (2d Cir. 1999) (granting withdrawal where counsel was forced to choose between complying with the client's insistence on advancing a frivolous argument and risking exposure to sanctions or malpractice liability).

With respect to the second factor, this Court must consider the "protracted history of the litigation" and "whether allowing counsel to withdraw would be too disruptive or cause too much delay, especially when the case is on the verge of trial."  *Bruce Lee Enterprises, LLC v. A.V.E.L.A., Inc.*, No. 1:10 C 2333(MEA), 2014 WL 1087934, at \*2 (S.D.N.Y. March 19, 2014) (citations omitted); *see also Vachula v. General Electric Capital Corp.*, 199 F.R.D. 454, 458 (D. Conn. 2000) ("where an attorney moves to withdraw on the eve of trial, courts generally deny such a motion."); *Goolden*, 2025 WL 2371539, at \*6 ("a Court may deny an application for withdrawal where allowing counsel to withdraw would be too disruptive or cause too much delay, especially when the case is on the verge of trial.") (citation omitted).  Here too, the Application is woefully deficient because the case has been pending since October 2023 (and Beyda's gross misconduct has been ongoing since July 2021), and the case is unquestionably on the verge of trial—starting in *14 days*.

Moreover, each of these factors is exacerbated by a lack of any indication that any new counsel is prepared to step into Mr. Grunsfeld's shoes—and there is serious doubt that anyone would actually agree to be the *fourth* lawyer on a losing case.  *See John,* 2019 WL 13205033, at \*3 (denying withdrawal where "there is no substitute counsel already retained and waiting to step in and there is no guarantee that substitute counsel could otherwise be retained. Withdrawal would definitely result in a disruption in the steady progression of the case.") (citation omitted); *see also Ghesani v. Trico VIII Petroleum, Inc.*, No. 03 Civ. 9854 (FM), 2005 WL 3117485, at \*1



July 1, 2026
Page 4

(S.D.N.Y. Nov. 22, 2005) (denying withdrawal where the Court already ordered that there will be no adjournment of the trial date because "to permit the requested withdrawal just prior to the trial would cause disruption to the Court's calendar and waste precious judicial resources."); *Hexemer v. General Elec. Co.,* No. 12-CV-1808 (LEK/CFH), 2014 WL 5465813, at *3 (N.D.N.Y. Oct. 28, 2014) ("if counsel's motion was granted on the grounds counsel proffers, namely that the remaining retaliation claim was frivolous, it would foreclose the possibility of any subsequent attorney from taking the case, or the court being able to appoint counsel for plaintiff. This would have a significant negative impact on the case.").

At a minimum, in addition to the questions the Court may have with respect to the Application, Parts Authority respectfully submits that Mr. Grunsfeld should address at least the following issues *in camera*:

1. Whether Beyda is directing Mr. Grunsfeld to pursue frivolous assertions or defenses, which Mr. Grunsfeld believes would be improper for him to assert at trial.

2. Whether Beyda attempts to "buy time" without having to testify under oath at trial because the Internal Revenue Service is performing an audit of Beyda's and/or Coney Island's 2021 tax returns (filed in late 2023), and whether Beyda's accountants at Anchin (who are also trial witnesses here) are participating in the audit and/or its defense because Anchin prepared the 2021 tax returns for Beyda.

3. Whether the reasons for Mr. Grunsfeld's attempted withdrawal are the same as the reasons why Beyda retained Mr. Grunsfeld to replace Abrams Fensterman, and/or the same as the reasons Beyda retained Abrams Fensterman to replace K&L Gates.

4. Whether a reason for Mr. Grunsfeld's "irreconcilable differences" is the fact that Mr. Grunsfeld's law firm partner Ron Lazar is a witness at trial, who will give adverse testimony concerning Beyda's "offshore" financial practices such as a $2.5 million loan from WorldQuartz, a Tortola, B.V.I. company, represented by Mr. Lazar in a transaction with Beyda.

### III.    The Trial Should Proceed as Scheduled

Beyda is clearly engaging in an effort to disrupt the trial and cause as much chaos as possible.  He has no viable defense to his wrongdoing, and faces significant liability as a faithless servant by having to return $175,000 in salary, $616,000 in sales commissions, $135,000 in forensic accountant fees, interest on the $799,853 of customer funds he retained for years after he should have remitted the money to Parts Authority, and over $1 million in attorneys' fees and costs incurred by Parts Authority as part of the "clean review protocol" and to pursue this litigation.  *See generally* ECF 102, Parts Authority Pre-Trial Memorandum.  This is *before* potential punitive damages for this brazen and malicious misconduct.  *Id.*

Parts Authority has been diligently pursuing Beyda *for years* and has complied with every single order and instruction from this Court.  Parts Authority has made arrangements for its



July 1, 2026
Page 5

Chairman, Randy Buller, and its Vice President of Accounts Receivable, Larry Schneider (who will have just returned from an international vacation the weekend before the start of trial) to be available at trial, as well as other witnesses that are under Parts Authority's control.  Parts Authority likewise secured its expert witness' availability for trial and has incurred costs and expenses to serve trial subpoenas on third party witnesses to ensure their appearance.  Moreover, Parts Authority's in-house (one of whom is traveling across the country to attend the trial) and outside counsel have been working diligently to prepare for and be available for trial, particularly given the Court's instruction that the trial will happen on July 13 and it will be in person. Needless to say, upending all this now merely because Beyda attempts to engineer a tactical delay is unfair and prejudicial to Parts Authority.  Nor is it appropriate for Beyda to have wasted the Court's time and resources, requiring a do-over according to Beyda's schedule.

Moreover, this Court has already accommodated Beyda and Mr. Grunsfeld's requests for extensions on numerous occasions, starting with an additional 30 days to replace an expert witness and complete expert reports, then additional time to complete expert depositions, and then additional time to complete pre-trial filings.  It need not accommodate Beyda any longer, particularly given the *mutually agreed* July 13, 2026, trial date, and the Court's directive that the trial will not be adjourned.

Indeed, Mr. Grunsfeld and his firm have been representing Beyda and his companies for years (including in a parallel AAA arbitration between the parties concerning commercial leases for Parts Authority's stores at Beyda's buildings), and cannot be credibly heard to complaint now, on the eve of trial, that they are just learning of "irreconcilable differences" concerning strategy. Not only is Beyda the primary witness to his own wrongdoing, but Beyda has been instructing Mr. Grunsfeld on the facts and the theories of this case and Beyda's defenses for many months.

**IV.     Failure to Comply with June 29, 2026, Deadlines Should Not be Excused**

As the Court indicated yesterday, Beyda failed to comply with the pretrial scheduling order, failed to submit opposition to Parts Authority's motions *in limine* and failed to submit his pre-trial brief on June 29, 2026.  Nor did Beyda make an emergency application *before* the June 29, 2026, deadline, when he admittedly knew "since last Wednesday" (ECF 98-1, ¶ 6) (*i.e.*, June 24, 2026) that this was a distinct possibility.  As such, Parts Authority will look to the Court's guidance at the upcoming hearing on what sanctions and remedies may be appropriate even if the Court were to deny the Application in its entirety.  *See, e.g.*, *Martin v. Giordano*, 185 F.Supp.3d 339, 361-62 (E.D.N.Y. 2016) (sanctions are appropriate under Rule 16 for violations of pretrial scheduling orders even without bad faith); *Icon International, Inc. v. Elevation Health LLC*, 347 F.R.D. 274 (S.D.N.Y. 2024) (awarding sanction of preclusion of evidence and payment of opposition's expenses incurred due to plaintiff's failure to comply with Court's scheduling and discovery orders).

Indeed, Beyda's failure to file his pretrial brief causes additional significant prejudice to Parts Authority.  Specifically, Parts Authority is entitled to know Beyda's actual factual assertions about the evidence, actual defenses, and actual legal authority for his positions at trial.



July 1, 2026
Page 6

Parts Authority is certainly entitled to know this information *before* it submits its direct testimony by declaration from Mr. Buller and Mr. Schneider, as the parties agreed in the JPTO, on July 3, 2026.  Equally important is the fact that Parts Authority is entitled to know what *Beyda's* direct testimony by declaration will be, which is also due on July 3, 2026, but which Beyda apparently will not be submitting because he instructed Mr. Grunsfeld "to stop all work." The failure to submit Beyda's pre-trial brief is inexcusable and untenable, and yet another illustration of Beyda's bad faith litigation tactics to disrupt and abuse the judicial process.  In the event Beyda fails to submit direct testimony on his case-in-chief by July 3rd, it is submitted that he be precluded from doing so.

Finally, Parts Authority's motions *in limine* are unopposed, and should be granted for the reasons stated therein.

Respectfully submitted,

*/s/ Daniel Gimmel*

Daniel Gimmel

cc:    Gerald Grunsfeld, Esq.