# LAZAR GRUNSFELD ELNADAV LLP
## ATTORNEYS AT LAW

GERRY GRUNSFELD, ESQ.
(718) 947-7476
Gerry@lgelaw.com

July 6, 2026

Hon. Seth D. Eichenholtz
U.S.D.C.    E.D.N.Y.

**Re:**        *Parts Authority, LLC v. Beyda*, **No.1:23-cv-07656-NCM-SDE**

Dear Judge Eichenholtz:

I represent Defendant in this action and submit this opposition to Plaintiff's motion to preclude Sean Tanner's expert testimony.

As an initial matter, Plaintiff misstates and mischaracterizes Mr. Tanner's report. Mr. Tanner's report does not offer an opinion as to whether Mr. Beyda delay in forwarding monies was intentional/unintentional or fraudulent/non-fraudulent. This question of course, will be up to the Court to determine. Rather,  Mr. Tanner's  report discusses whether  Mr. Beyda's conduct was consistent with the behavior and conduct typically seen where fraud occurs.

> My assignment was to evaluate whether the evidence is consistent with (a) the alleged intentional delay in remitting the $712,323 of customer receipts during the Post-Closing Transition Period, or (b) an unintentional delay in remitting the $712,323 of customer receipts during the Post-Closing Transition Period.
>
> I was not asked to render a legal opinion regarding whether "fraud, willful misconduct, or dishonesty" did or did not occur, nor do I offer any legal conclusions on that topic or any other legal topic. My opinions are limited to operational and financial analysis and whether the operational and financial evidence I obtained was consistent with (a) the alleged intentional delay in remitting customer receipts during the Post-Closing Transition Period, or (b) an unintentional delay in remitting customer receipts during the Post-Closing Transition Period.

*Dkt, 90-9,*1-2.*

Thus, the real issue before this Court is whether or not there is a basis to preclude Mr. Tanner's expert testimony regarding whether Mr. Beyda's actions/omissions are consistent or inconsistent with the typical actions/omissions seen in the presence of fraud.

Plaintiff's first argument is that  Defendant's state of mind is irrelevant to both a breach of contract and a faithless servant claim. Plaintiff is wrong with respect to the faithless servant cause of action, where state of mind is absolutely one of the relevant factors.

Plaintiff cites *Roytlender v. D. Malek Realty, LLC*, 2024 U.S. Dist. LEXIS 133591, 2024 WL 3566998, as purported proof of its assertion that the state of mind is irrelevant to a faithless servant claim. However, this case does not discuss state of mind at all. It merely discusses the degree of disloyalty required in order for the faithless servant standard to be met. The case does not discuss whether a finding of intent is required. In fact, one could make the argument that

1

*Roytlender* disproves Plaintiff's assertion that state of mind is irrelevant, because disloyalty by its very definition requires a degree of intent.

Furthermore, there are numerous cases where the Court explicitly stated that intent/state of mind is relevant to the faithless servant standard. See, *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 204 (2d Cir. N.Y., 2004) (discussing the faithless servant standard):

> The record shows that Phansalkar intended for AW not to receive certain income and benefits, and to that end he not only withheld information from AW but also declined the offer to AW of a Sync Board seat. The record also shows that Phansalkar intended to keep at least some of these benefits for himself -- because he **knowingly** received and retained them without ever disclosing them to AW.  In taking these actions, Phansalkar disregarded his affirmative duty to act in his employer's best interests. See Maritime Fish Prods., 474 N.Y.S.2d at 286. We find that Phansalkar **acted with sufficient knowledge of his omissions, and their consequences**, to warrant forfeiture under New York law. (emphasis added)

And see, *Carco Group, Inc. v. Maconachy*, 383 Fed. Appx. 73, 76-77, (2d Cir. 2010):

> Here, the district court found that under either standard,  Maconachy was a faithless servant because of his self-dealing and **deception** in removing the name of a family member from employee records transmitted on a weekly basis to O'Neill.

> We see no error in this determination. The **deception** in this case is plain…(emphasis added)

Thus, a showing of intent is absolutely relevant to a claim of faithless servant.

Plaintiff also argues that a defendant's intent or state of mind is not an appropriate subject for an expert to opine on, and Plaintiff cites numerous cases where the Court found that an expert may not offer an opinion as to whether an act was fraudulent or not. The cases cited by Plaintiff are irrelevant because as shown above, Mr. Tanner does not, and will not, offer such an opinion. Rather, he will opine whether Mr. Beyda's conduct is consistent or inconsistent with typical badges of fraud. Indeed, Mr. Tanner will testify at trial that he has testified in Court on numerous occasions about badges of fraud.

The presence or absence of badges of fraud has long been recognized by the Courts as relevant to a finding of intent. See, *LaMonica v. NEDM Payables Corp. (In re Pretty Girl, Inc.*), 644 B.R. 298, 306-307, 2022 Bankr. LEXIS 2844, *11, 2022 WL 5333830:

> As proving actual intent under DCL Section 276 is difficult to establish through direct evidence, the relevant intent may be inferred from the facts and circumstances surrounding the transfer." S.E.C. v. Smith, 646 Fed.Appx. 42, 45 (2d Cir. 2016) (summary order) (citing In re Cassandra Grp., 312 B.R. 491, 497 (Bankr. S.D.N.Y. 2004)). "These so-called 'badges of fraud' are facts and circumstances 'so commonly associated with fraudulent transfers that

> their presence gives rise to an inference of intent.'" Kim, 311 F.Supp.3d at
> 612 (quoting In re Sharp, 403 F.3d at 56).

And see, *SEC v. Smith*, 646 Fed. Appx. 42, 45, 2016 U.S. App. LEXIS 7112, *8, 2016 WL 1552535.

Because testimony regarding the presence of absence of badges of fraud is highly relevant (but not determinative) as to presence or absence of fraud, such evidence is admissible in this Court. See, *Trott v. Platinum Mgmt. (NY) LLC (In re Platinum-Beechwood Litig.),* 469 F. Supp. 3d 105, 116, 2020 U.S. Dist. LEXIS 113277, *81-82, 2020 WL 3497287 (S.D.N.Y. 2020):

> However, Post may testify as to (1) what a fiduciary or investment manager in a given context would ordinarily do according to relevant industry standards, (2) what the defendants here did instead…Fn9: To be clear, Post may testify to the so-called badges of fraud, subject to all exclusions and conditions mentioned elsewhere in this Opinion and Order. See Grayiel v. AIO Holdings, LLC, No. 3:15-cv-821(CHB)(LLK), 2019 U.S. Dist. LEXIS 97113, 2019 WL 2372901, at *3 (W.D. Ky. Mar. 15, 2019)

And see *Emerson Elec. Co. v. Holmes*, 2019 U.S. Dist. LEXIS 100957, *28-29 [E.D.N.Y. 2019]:

> However, Plaintiff does not cite to a single statement of fact to support these "undisputed" badges of fraud. Further, Holmes's expert provides evidence to refute Emerson's allegations that any of Holmes's actions were motivated by an intent to defraud Plaintiff.

Thus, it is clear that Mr. Tanner should be permitted to testify regarding the typical badges or indicia of fraud and as to whether such typical badges/indicia are present in the instant case. Furthermore, for the avoidance of doubt, Defendant hereby stipulates that Mr. Tanner will not testify at trial as to whether Mr. Beyda's actions/omissions were intentional or unintentional or fraudulent/not fraudulent.

Plaintiff also argues that Mr. Tanner does not provide any expert analysis in his report but instead, merely offers the same opinions which Mr. Beyda could give himself. A cursory review of Mr. Tanner's expert report (*Dkt 90-9*) clearly demonstrates that this claim is false. Mr. Tanner is a Certified Public Accountant with 20 years of experience. He is also a Certified Fraud Examiner. Mr. Tanner served as a director of accounting for a parent corporation of 100 affiliated entities. *Id. at *2*. Furthermore, Mr. Tanner has testified at trial on several prior occasions in three different states. With respect to the substance of his report, Mr. Tanner clearly provides expert analysis. At page nine of his report, Mr. Tanner cites five different professional sources as his basis for reviewing Mr. Beyda's actions in the context of Financial Environment; Behavioral Science; and Transaction and Financial Evidence. These are accounting sources and concepts that Mr. Beyda is certainly unaware of, and that anyone without accounting expertise is unaware of. Mr. Tanner's report examines each of these three concepts in the context of Mr. Beyda's actions and omissions and reports whether Mr. Beyda's actions and omissions are typical or atypical of intentional/fraudulent conduct.  See, *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995)

Furthermore, Fuller's Daubert contention that Woolley's testimony lacked any grounding in science, and that he merely stated an obvious concept that any layman knows, is meritless. Woolley based his opinion on the following factors grounded in academic and practical experience: examination of various materials and educational sources on safety regarding the ventilation of an HC binder; review of Fuller's MSDS; interviews with McCullock concerning her work area and the glue pot; background industrial experience with ventilation; and practical experience with fumes. Thus, his analysis went far beyond that of a layman.

Another example of the expertise demonstrated in the report is that Mr. Tanner used his financial expertise to examine the thousand plus transactions and reported that not only were there occasions when Mr. Beyda under-paid the PA, but there were also occasions where he over-paid the PA (thus providing another example of an act that was inconsistent with the typical badges of fraud).

In sum, Mr. Tanner's report clearly provides expert analysis and Plaintiff's claims to the contrary are a transparent attempt to preclude testimony that is hurtful to its claim that Mr. Beyda was a faithless servant. As such, Plaintiff's baseless attempt to preclude Mr. Tanner's expert testimony should be precluded.

Furthermore, to the extent that Plaintiff's expert takes issue with Mr. Tanner's conclusions, and/or that Plaintiff believes that Mr. Tanner did not review all of the relevant materials, Plaintiff is free to cross-examine Mr. Tanner with these claims at trial. These purported impeachment claims are not a basis to preclude expert testimony. See, *McCullock at 1044:*

> *Disputes as to the strength of his credentials, faults in his use of differential etiology as a methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony. See id. at 2798 ("Vigorous cross-examination, presentation of contrary evidence, and* careful *instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."*

And see, *Hutch Enters. v. Cincinnati Ins. Co.,* 2019 U.S. Dist. LEXIS 137593, *13, 2019 WL 5783574 (W.D.N.Y. 2019)

> Cincinnati's challenges to whether Mr. Thomas' opinions were properly based on a complete picture of the condition of the roofs at the time of the November 2014 storm, including prior leaks,5 and the individualized weather conditions that may have impacted each site, implicate the weight that the jury may afford his opinions and can be explored on cross-examination. See Quiet Technology DC-8, Inc., 326 F.3d at 1340-41 ("although rulings on admissibility under Daubert inherently require the trial court to conduct an exacting analysis of the proffered expert's methodology . . . it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence"). See also United States v. 14.38 Acres of Land, More or Less Situated in Leflore City, State of Mississippi, 80 F.3d 1074, 1077 (5th

Cir. 1996) ("[a]s a general rule, questions relating to the bases and [*14] sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration").

And see *Betts v. Sixty Lower E. Side, LLC*, 2025 U.S. Dist. LEXIS 124176, *15, 2025 LX 296250, 2025 WL 1795362 (S.D.N.Y. 2025):

Accordingly, defendants' request to preclude Dr. Otonichar from testifying on issues of causation and permanency is denied.10 Any concerns regarding the depth or form of his evaluation goes to the weight of his testimony, rather than its admissibility, and may be addressed on cross-examination.

## CONCLUSION

Plaintiff's purported grounds for precluding Mr. Tanner's expert report are demonstratively without merit.

**Wherefore**, Defendant respectfully requests that the Court deny Plaintiff's motion.

Respectfully submitted,

**s/ Gerry Grunsfeld**

LAZAR GRUNSFELD ELNADAV LLP

5